**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | **No. 1:23-cr-161 (CRC)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| | **:** | |
| **RUSSELL CAMPBELL,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing.  On September 21, 2023, the defendant pleaded guilty—pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)—to a two-count Indictment, charging him with one count of Unlawful Possession of a Firearm While Under Indictment, in violation of 18 U.S.C. § 922(n), and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Felony, in violation 18 U.S.C. § 922(g)(1).  *See* ECF No. 16 (Plea Agreement) ¶ 4.

For the reasons herein, and based on the 18 U.S.C. § 3553(a) factors, the United States requests that the Court accept the terms of the Rule 11(c)(1)(C) plea and sentence the defendant thereunder to a period of 30 months' incarceration for both Counts.  The United States further requests that the Court impose a period of three years of supervised release.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *June 20, 2021, Firearm Recovery—charged in Count One*:

On November 8, 2020, the defendant had been charged by complaint in D.C. Superior Court case number 2020 CF2 8559 for Carrying a Pistol Without a License.  While on release in that case, on June 20, 2021, the defendant was armed with a loaded firearm in Washington, D.C.

1

On June 20, 2021, while in the vicinity of the Mobil Gas Station at 2210 Bladensburg Road NE around 12:30 a.m., law enforcement noticed both unusual traffic inside the station and a security guard contacting a group of people congregated around a silver Hyundai; the group ignored the security guard.

Officers exited their vehicle, and thereupon noticed the defendant's associate—Ricardo Glass, a/k/a, "Baby Jamo"—manipulating the front of his pants area and dropping an object into the trash can, which ultimately was determined to be a firearm with a giggle switch and extended magazine.  Glass was placed under arrest and ultimately charged.

Around the same time, law enforcement also observed the defendant adjusting his front waistband area, which caused the imprint of a magazine to become visible in the defendant's waistband area.  Almost immediately after patting him down, officers identified that the defendant, too, was armed.  From defendant's waistband, officers recovered a Glock 45 .9mm, bearing serial number BLPU184, with 23 rounds in the extended magazine, and one live round in the firearm's chamber, ready to be fired.    DNA testing confirmed that the defendant was included as a contributor in the DNA profile collected from the firearm.



The Hyundai that the defendant and his associates had been clustered around was searched, and therein, officers found a black duffel bag in the front passenger seat with two more firearms – one, a "ghost gun" rifle with a drum magazine containing 102 live rounds and one live round in the chamber; and the other, a Glock 22 .40 caliber handgun with an extended magazine. In the center console was a clear plastic bag with 5.23 grams of white-rock substance, testing positive for cocaine; and another plastic bag with 26 orange pills marked "3/0", which tested positive for fentanyl. Of note, surveillance shows that the defendant had not exited this Hyundai when he arrived at the gas station; rather he had exited from a different vehicle.

Of grave concern to the United States are the NIBIN leads associated with the firearm recovered on defendant's person, which suggest the firearm's use in two separate drive-by shootings close in time to its recovery on Defendant's person.

The first shooting occurred just five days prior on June 15, 2021, at 3700 Hayes Street NE. There, the suspect drove by Victim-1, who was standing by ITS car. The suspect shot at Victim-1 at least twelve times. Victim-1, who stated that IT did not know who had shot at IT, was transported to the hospital.

The second shooting linked to the defendant's firearm occurred just two days later on June 17, 2021, at 4401 E Street SE. Victim-2 reported that it was hanging out when it heard a vehicle speed in the block followed by 10 to 15 gunshots, which, according to Victim-2, sounded like they came from an automatic rifle. Victim-2 dropped to the ground and then felt that IT had been hit in the back, which Victim-2 sought treatment for at the hospital. Shotspotter detected more than 20 gunshots. Three days later, on June 20, 2021, the firearm involved in both shootings was found on defendant's person. He was arrested, but not charged at that juncture.

Four months later, on October 20, 2021, and still while under court-ordered supervision,

3

the defendant was involved in a shootout in the 200 block of 37th Place SE.  As a silver Infiniti drove south in the 200 block of 37th Place SE, CCTV showed the defendant walking across the street to get to the circle where the vehicle was.  Once at the middle of the circle, the defendant stopped and pulled out a black handgun with an extended magazine, pointing it at the vehicle. The vehicle stopped, facing northbound on 37th Place SE.  A frame-by-frame of the surveillance showed the individual in the vehicle shooting first before the defendant immediately fired back towards the vehicle.  The vehicle then fled the scene, leaving the defendant shot in the leg.  See below for screenshots from the surveillance.





Defendant was charged in connection with this October 20, 2021 incident in a second Superior Court case with docket number 2021 CF2 6023. He ultimately plead guilty to Carrying a Pistol Without a License in this new matter on May 25, 2022, and in exchange, the United States agreed to dismiss his then-pending matter, docket number 2020 CF2 8559. On June 7, 2022, Defendant was sentenced to 6 months' incarceration, with all of that time suspended under the Youth Rehabilitation Act ("YRA"), and with 18 months' supervised probation.

B. *November 11, 2022, Firearm Recovery—Charged in Count Two:*

While on supervised probation in 2021 CF2 6023, despite being a felon, and after having been ordered by the Court to not possess any firearms and to register as a Gun Offender, Defendant remained undeterred. On November 11, 2022, the defendant occupied a vehicle (hereafter, the "Suspect Vehicle") containing five firearms, one of which was forensically linked to him.

On the evening of November 10, 2022, the defendant's associate, Trevor Wright, a/k/a,

"Taliban Glizzy,"[1] arranged for a hired driver to pick up the defendant and another associate and transport them to a club in Washington, D.C.   Surveillance from 268 37th Place SE at approximately 5:30 p.m. shows the defendant entering the Suspect Vehicle, carrying a green and black backpack, later found to contain an AK-style pistol.



Around 3:00 a.m. on November 11, 2023, the defendant, Wright, and three others left the club in the Suspect Vehicle.   U.S. Secret Service ("USSS"), which had had been surveilling Wright, followed the Suspect Vehicle once it left the club.   When the Suspect Vehicle ran a red light, USSS performed a traffic stop around 3:11 a.m. in front of 810 7th Street, NW.   When the Suspect Vehicle was stopped, the defendant had been sitting in the driver's-side captain's chair next to where law enforcement found the green and black backpack.

Following a K9's sweep of the Suspect Vehicle and positive indication for the presence of

---

[1] Wright is charged in case number 22-cr-410 (CRC) and 23-cr-137 (CRC).

firearms, officers searched the vehicle and recovered five different firearms. Inside the green and black backpack was a 5.56 Zastava AK-Style pistol PAP M85PV, bearing serial number M85PV003177, with an extended magazine holding thirty .556 caliber live rounds and one live round in the chamber.



DNA testing revealed that the defendant was included as a contributor in the DNA profiles for both the Zastava pistol as well as the magazine therein. The defendant was excluded as a contributor for DNA profiles on the four other firearms in the vehicle he, Wright, and three others occupied.

On September 21, 2023, the defendant pleaded guilty to both counts in the Indictment—to wit, one count of Unlawful Possession of a Firearm While Under Indictment, in violation of 18 U.S.C. § 922(n), and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Felony, in violation 18 U.S.C. § 922(g)(1).

## II.    DISCUSSION AND SENTENCING RECOMMENDATION

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of

the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

The United States recommends that the Court sentence the defendant to a term of 30 months' incarceration followed by three years of supervised release per the terms of the parties' plea agreement. Under the totality of circumstances, including the nature and seriousness of the defendant's and his history and characteristics, the United States submits that such a sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

**A.  Nature And Circumstances of The Offense And History And Characteristics Of The Defendant**

As described *supra*, the nature and circumstances of the defendant's offenses warrant a significant sentence. The defendant's path to this day did not involve an isolated misstep or incident, but rather repeated arrests and contacts with the criminal justice system dating back to 2015. Indeed, the instant matter is not the defendant's first firearm conviction. The defendant had previously been charged with, and convicted of, similar criminal conduct, having plead guilty in March 2022 to Carrying a Pistol Without a License During Release.

However, each of his prior contacts with the criminal justice system had little to no deterrent effect on the defendant's behavior. The defendant's penchant for possessing firearms despite his prohibited status is not just confined to the aforementioned incidents. His cellphone from the November 11, 2022 arrest is full of numerous images of him with a variety of firearms. For example, the below image from the defendant's phone features him holding four firearms at

once.



The defendant's Instagram account further evinces his involvement in the trafficking of controlled substances, including prescription pills, promethazine containing codeine, and marijuana. The below posts from the defendant's Instagram account are a mere sample.

  

What's more, the defendant brazenly uses social media and music videos, among other tools, to promote a violent group originating in 37th Place SE and referring to themselves as the

"Fox 5 Gang."  See the below screenshot from the defendant's February 22, 2023 music video on YouTube, "War General,"[2] which was viewed over one-million times.



In this music video, the defendant and his associates (some of whom have since been murdered), taunt and threaten their rivals and glorify gun violence.  The defendant's lyrics celebrate his status as a "war general" who shoots at rivals and delivers orders to the younger members.  Not only do these lyrics place the defendant's steady possession of firearms in a troubling context, but the popularity of his music evinces the level of influence he exercises in the D.C. community.  This observation underscores the importance of a substantial sentence in the instant matter to ensure deterrence beyond just the defendant.

　　　　All in all, the aforementioned NIBIN leads, surveillance of the defendant firing a weapon on October 20, 2021, and the music videos he posts to YouTube present the reasonable inference that the defendant is not simply collecting firearms without ever discharging them.

---

[2] *See* https://www.youtube.com/watch?v=2prB8tPOKrY.

### B.     <u>The Need for the Sentence to be Imposed</u>

Under the totality of the circumstances, a 30-month sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a). The United States credits the defendant's acceptance of responsibility in this case but also recognizes that a 30-month sentence reflects the seriousness and dangerousness of his conduct. Undaunted, the defendant has continuously displayed callous disregard for the safety of the community by repeatedly arming himself.

In the context of mounting gun violence in Washington, D.C., it is important for the defendant's sentence to reflect the seriousness of his conduct. As the Court is well aware, our community has recently faced staggering levels of gun violence.  Washington, D.C. saw over 200 homicides in each of 2021 and 2022.  *See* MPD, District Crime Data at a Glance.  About 82 percent of the 226 homicides in 2021 involved the use of a firearm. *See* MPD, Annual Report 2021, 27. Tragically, this past year was no different; there were 274 homicides in D.C., most of which stemmed from gunfire.  *See* Emily Davies, John D. Herman, and Peter Hermann, *2023 was District's deadliest year in more than two decades,* Wash Post (Jan. 1, 2024), https://www.washingtonpost.com/dc-md-va/interactive/2024/dc-crime-homicide-victims-shooting-violence/.

With that backdrop, a 30-month period of incarceration in the instant matter is appropriate to deter the defendant from further illicit firearms activity to protect the community and to signal

to the defendant and his considerable following that there are real costs for repeatedly flouting the law.

### C.     <u>Statutory Penalties and the Sentencing Guidelines</u>

The United States concurs with the assessment of the United States Probation Office for the District of Columbia regarding the total offense level applicable in this case, the defendant's criminal history score, and the resultant U.S.S.G. range.  The United States agrees that the base offense level in this case is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B). *See* ECF No. 20 (Final Presentence Investigation Report ("PSR")) ¶ 27.  Given the defendant's acceptance of responsibility, there should be a three-level reduction, bringing the total adjusted offense level to 17.  *Id.* ¶ 36.

The United States further agrees, based on the documentation available to the PSR writer about the defendant's prior convictions, that the defendant's criminal history score is 1, which places him in Criminal History Category I.  *Id.* ¶ 41.  Accordingly, an offense level of 17 at a Criminal History Category I places the defendant's Guidelines range at 24 to 30 months of incarceration.  *Id.* ¶ 78.

The United States is seeking a Guidelines-compliant sentence of 30 months' incarceration. This sentence reflects the principles set forth in the Guidelines and appropriately balances the Section 3553(a) factors and the interests of justice.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, the United States recommends that the defendant, Russell Campbell, be sentenced to 30 months' incarceration to be followed by a term of three years' supervised release.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     <u>/s/ *Sitara Witanachchi*    </u>
SITARA WITANACHCHI
D.C. Bar No. 1023007
Assistant United States Attorney
United States Attorney's Office
601 D. Street NW
Washington, D.C.  20530
(202) 699-1978
Sitara.witanachchi@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2024, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

<u>/s/ *Sitara Witanachchi*     </u>
SITARA WITANACHCHI
Assistant United States Attorney